UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ALAN KRESS, BILLY FORD, ERIC STAGGS, TIMOTHY-PATRICK TREACY, RANDY CARR, on their own behalf and on behalf of a class of those similarly situated, Plaintiffs, | ) ) ) ) ) ) | |
| vs. | ) ) ) | 1:08-cv-00431-LJM-DML |
| CCA OF TENNESSEE, LLC d/b/a CORRECTIONS CORPORATION OF AMERICA, WARDEN JEFF CONWAY, NEIL PROBST, TIMOTHY LITTLE, VIRGINIA LEE, and MARION COUNTY SHERIFF FRANK ANDERSON, Defendants. | ) ) ) ) ) ) ) | |

**MEMORANDUM OPINION & ORDER ON DEFENDANTS' AFFIRMATIVE DEFENSE**

Plaintiffs, Alan Kress ("Kress"), Billy Ford ("Ford"), Eric Staggs ("Staggs"), Timothy-Patrick Treacy ("Treacy"), and Randy Carr ("Carr") (collectively, "Plaintiffs"), are current and former inmates at Marion County Jail II ("Jail II"). Compl. Defendants, CCA of Tennessee, LLC d/b/a Corrections Corporation of America, Warden Jeff Conway, Neil Probst, Timothy Little, Virginia Lee, and Marion County Sheriff Frank Anderson (collectively, "Defendants"), are responsible for managing Jail II. *Id.* In their Complaint, Plaintiffs assert a number of claims against Defendants, all of which attack the conditions at Jail II. *Id.* This matter is before the Court after an evidentiary hearing for a decision on Defendants' affirmative defense that Plaintiffs failed to exhaust their administrative remedies before filing the underlying lawsuit.

## I. **STANDARD**

Plaintiffs' constitutional and federal claims are subject to the exhaustion requirement set forth in the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997, as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). On February 2, 2009, Magistrate Judge Lynch stayed discovery and briefing on Plaintiffs' Motion to Certify Class (Dkt. No. 57) until the Court enters judgment on Defendants' exhaustion defense. As to their affirmative defense, it is Defendants' burden to establish that administrative remedies were available to Plaintiffs and that the Plaintiffs failed to exhaust those administrative remedies. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005). "For a prisoner to exhaust his remedies within the meaning of § 1997e(a), he must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Burrell v. Powers*, 431 F.3d 282, 285 (7th Cir. 2005) (internal quotation marks omitted). In other words, exhaustion must occur before Plaintiffs filed their suit. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

While the Seventh Circuit has not explicitly defined what constitutes "availability," it has cited with approval the Second Circuit's objective test, "under which the court looks at whether 'a similarly situated individual of ordinary firmness would have deemed the grievance procedures to be available.'" *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (quoting *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004)). "[W]hen prison officials fail to provide inmates with forms necessary to file an administrative grievance, administrative remedies are not available." *Kaba*, 458 F.3d at 684. Similarly,

> [i]f prison officials prevent an inmate from exhausting administrative remedies by ignoring properly filed grievances or by impeding the use of the grievance system through actions such as withholding necessary forms, destroying inmate submissions, or announcing additional steps not mandated by regulation or rule, those remedies are not 'available' to the prisoner and he has not forfeited his ability to file suit.

*Smith v. Buss*, No. 09-1980, 2010 WL 457235, at *1 (7th Cir. Jan. 29, 2010) (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)).

In *Pavey*, the Seventh Circuit held that if raised, courts must resolve the exhaustion issue before merits discovery by employing a three-step analysis. 544 F.3d at 742.

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.*

With the foregoing standards in mind, the Court held an evidentiary hearing on this matter to determine whether Plaintiffs exhausted their administrative remedies. *See Pavey*, 544 F.3d at 742 (holding that courts, not juries, should be the triers of fact on the issue of whether a prisoner/plaintiff exhausted his administrative remedies). The Court now issues

its opinion. Any factual statement or finding more appropriately considered a conclusion of law shall be so deemed, and vice versa.

## II. **FINDINGS OF FACT**

### A. DEFENDANTS' PROCEDURE FOR FILING COMPLAINTS

Under Defendants' written policy for operating Jail II, inmates are supposed to receive a handbook upon intake (a "Jaill II handbook"), which describes the procedure for filing complaints. Tr. at 15-16; Def.'s Exs. 9, 102. An inmate can begin the procedure for filing a complaint by requesting an informal resolution form from any Jail II staff member. Tr. at 8. Specifically, an inmate can request an informal resolution form from a unit manager, who is responsible for overseeing the operations associated with a floor of inmates; a case counselor, who is responsible for addressing inmate needs as they arise; a correctional counselor, who is responsible for maintaining sanitation of the floor and ensuring that inmate personal hygiene and clothing needs are met; or a correctional officer, who is responsible for maintaining the safety and security of the floor. Tr. at 8-10; Def.'s Ex. 100. Inmates can also request an informal resolution form from any other Jail II personnel. Tr. at 11.

In addition, under Defendants' policy for operating Jail II, after an inmate requests and completes an informal resolution form, he places it in a designated reciprocal. Tr. at 11. The grievance coordinator checks the reciprocal Monday through Friday, collects any informal resolution forms, and distributes them to the department head, a unit- or floor-level Jail II personnel who has the most familiarity with the sorts of issues about which inmates

4

typically complain. Tr. at 11-12. That person will then have a meeting with the inmate who filed the informal resolution form to address the issue that was raised. Tr. at 12. If the inmate is not satisfied that the issue has been resolved, he may request a formal grievance form from any Jail II personnel. *Id.* If an inmate completes a formal grievance form, he places it in a designated reciprocal for the grievance coordinator to collect. Tr. at 13. The complaint is then investigated by the grievance coordinator to determine the outcome. Tr. at 14. If the inmate is not satisfied with the grievance coordinator's decision, he may appeal the decision to the warden, who makes the final decision on appeal. Tr. at 15; Def.'s Ex. 101.

Although the Court finds that Defendants established the above procedure for filing complaints, the Court also finds that at all relevant times associated with Plaintiffs' Complaint, there was no reliable system in place at Jail II for recording the details associated with the filing and resolution of inmate complaints. Tr. at 55-56, 60-61, 67, 69.

### B.  PLAINTIFF, RANDY CARR

In January 2007, Carr was first incarcerated in Jail II. Tr. at 74. Upon intake, he was held in a small jail cell with approximately twenty other detainees for approximately eighteen hours. Tr. at 75. Carr asked for a "grievance" to complain about these conditions. *Id.* In February 2008, Carr was incarcerated in Jail II for the second time. Tr. at 74. Again, he asked for a "grievance" to complain about being held in a small jail cell with several other detainees for an extended period of time. Tr. at 76. On both occasions, Defendants' failed to respond to Carr's request for a "grievance." Tr. at 75-76.

During his 2007 incarceration, Carr also attempted to complain about not receiving proper dosages of his blood pressure medication and about not receiving medical attention for a twisted ankle. Tr. at 79. Both times, Defendants did not respond to his requests for a "grievance." Tr. at 80. Because Carr did not read the Jail II handbook that he was issued during intake, it was only after filing this lawsuit that Carr learned that he must request in informal resolution form, not a "grievance," in order to raise a complaint to which a Jail II personnel will respond. *Id.*

### C. PLAINTIFF, TIMOTHY-PATRICK TREACY

In June 2007, Treacy was incarcerated in Jail II. Tr. at 91. He did not receive a Jail II handbook upon intake. Tr. at 92-94. After this lawsuit was filed, Treacy acquired a Jail II handbook from a departing inmate. Tr. at 92, 94-95. During his incarceration at Jail II, he requested a "grievance" to complain about being exposed to raw sewage. Tr. at 96. He managed to receive a formal grievance form from a nighttime guard. Tr. at 97. Treacy wrote a lengthy complaint and returned the completed formal grievance form to the same nighttime guard. Tr. at 96. Treacy also completed formal grievance forms on two other occasions. Tr. at 98. Treacy did not ask for an informal resolution form for any of these three complaints because he had not yet been informed by any Jail II personnel that such a form existed. Tr. at 103. After receiving the three formal grievance forms that Treacy submitted, a Jail II personnel returned the formal grievance forms to Treacy and informed him that he needed to complete an informal resolution form before submitting a formal

6

grievance form. Tr. at 110-11. Thereafter, Treacy did not submit informal resolutions for any of these three complaints. Tr. at 103.

Treacy also completed and submitted two informal resolution forms about issues unrelated to his previous three complaints. Pls.' Exs. 53, 54. After receiving responses from unidentified Jail II personnel, Treacy did not further pursue either of the complaints raised in these informal resolution forms. *Id.*; Tr. at 109.

### D.  PLAINTIFF, ALAN KRESS

In June 2007, Kress was incarcerated in Jail II. Tr. at 114. He did not receive a Jail II handbook upon intake, but received one after this lawsuit was filed. Tr. at 115, 123-24. In February 2007, Kress attempted to complain about not receiving his mail until one month after it had been sent to him. Tr. at 116-17. He requested and received a "grievance" form from an unidentified Jail II personnel. Tr. at 117. He completed and submitted the "grievance" form and did not receive a response from any Jail II personnel. Tr. at 117-18.

During his incarceration, Kress also attempted to complain about not receiving proper dosages of his medications. Tr. at 119. He informed a Jail II personnel of his desire to file a "grievance," and was told that it was an issue that he could not seek to remedy by filing a "grievance." Tr. at 120.

Lastly, in March of 2007, Kress filed an informal resolution form to complain about not receiving his medications during a four week stretch in February and March of 2007. Tr. at 120. Kress Dep. Ex. 47. The record does not reflect whether Kress specifically

asked for an informal resolution form or whether he received an informal resolution form after requesting a "grievance." Two days after filing the informal resolution form, a Jail II medical department personnel informed Kress in a letter that his medication had been out of stock during the time period about which he complained of in the informal resolution form. Kress Dep. Ex. 48. Kress was satisfied that the issue was resolved. Tr. at 127.

### E.  PLAINTIFFS, BILLY FORD AND ERIC STAGGS

Ford and Staggs did not appear at the hearing on this matter. Tr. at 26, 133-34.

## IV.  **CONCLUSIONS OF LAW**

### A.  WHETHER THE PLAINTIFFS EXHAUSTED THEIR ADMINISTRATIVE REMEDIES

With respect to Carr's complaints, regardless of the terminology used, Carr informed Defendants that he wished to submit complaints, and Defendants withheld the forms that were necessary for Carr to complete and submit his complaints in accordance with Defendants' procedure for filing complaints. In the Court's opinion, a person similarly situated to Carr would not conclude that Defendants' procedure for filing complaints was available to him or her. Accordingly, the Court concludes that Defendants have not established, as is their burden, that administrative remedies were available to Carr, which he failed to exhaust. *See Kaba*, 458 F.3d at 684 ("[W]hen prison officials fail to provide inmates with forms necessary to file an administrative grievance, administrative remedies are not available."). Therefore, as to Defendants' affirmative defense that Plaintiffs failed

to exhaust their administrative remedies, the Court finds in favor of Carr and against the Defendants with respect to all of Carr's claims that are subject to the PLRA's exhaustion requirement.

With respect to Treacy's first three complaints, the Defendants failed to timely provide Treacy with any information regarding Defendants' procedure for filing complaints at Jail II. However, Treacy managed to obtain, complete, and submit formal grievance forms, which Defendants responded to by returning the completed formal grievance forms to Treacy with instructions that he first needed to complete and file informal resolution forms. Treacy did not further pursue these complaints through the informal resolution process, and Defendants did not inhibit his ability to do so in any way.

With respect to the unrelated complaints that Treacy raised through the informal resolution process, Treacy did not pursue these matters past the informal resolution stage, and Defendants did not inhibit his ability to further pursue these complaints in any way. In the Court's opinion, a person similarly situated to Treacy would conclude that Defendants' procedure for filing complaints was available to him or her. Accordingly, the Court concludes that with respect to all of his complaints, Defendants have established that administrative remedies were available to Treacy, which he failed to exhaust, and that his failure to do so was his own fault. Therefore, the Court finds in favor of the Defendants and against Treacy with respect to all of Treacy's claims that are subject to the PLRA's exhaustion requirement.

With respect to Kress' first complaint, regardless of the terminology used, Kress completed and submitted a complaint to Defendants, and the Defendants failed to respond.

With respect to Kress' second complaint, Kress was informed that the Defendants would not consider the issue about which he complained. In the Court's opinion, a person similarly situated to Krress would not conclude that Defendants' administrative procedure for filing complaints was available to him or her, despite the fact that Kress' third complaint was answered to his satisfaction. Accordingly, with respect to Kress' complaints, the Court concludes that Defendants have not proven that administrative remedies were available to Kress, which he failed to exhaust. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (holding that "administrative remedies are exhausted when prison officials fail to respond to inmate grievances . . . ").

Ford did not appear at the hearing on this matter and Defendants objected to the admission of his deposition testimony. Tr. at 133-34. The Court sustained the objection and, therefore, there is no evidence before the Court as to whether Ford exhausted his administrative remedies before filing the underlying lawsuit. *Id.* Similarly, Staggs did not appear at the hearing on this matter, and no evidence has been presented to the Court regarding Staggs alleged failure to exhaust his administrative remedies. Tr. at 26.

With respect to Ford's and Staggs' claims that are subject to the PLRA's exhaustion requirement, in the Court's opinion, this case took an unusual procedural turn, which perhaps left the parties at a loss as to how to proceed. From the Court's research, it appears that the exhaustion issue is typically briefed through a motion for summary judgment before the Court holds a *Pavey* hearing to resolve factual disputes. *See, e.g., Peterson v. Miami Corr. Facility,* No. 3:07-cv-397, 2009 WL 523117, at *2 (N.D. Ind. Feb. 27, 2009) (Lozano, J.) ("If the court cannot resolve the question based on the affidavits and

documentary evidence, it must conduct a hearing to resolve any disputed issues of material fact."). However, in this case, the parties only submitted pretrial memoranda that did not reference evidentiary designations. The Court is aware that it did not instruct the parties to do otherwise.

The implication from litigating the exhaustion issue solely through an evidentiary hearing is that Defendants had the burden to present evidence at the hearing, which establishes that Plaintiffs failed to exhaust their administrative remedies with respect to each of the claims that Plaintiffs alleged in their Complaint. At the hearing on this matter, it became evident to the Court that, for purposes of Plaintiffs' claims, there was no reliable system in place at Jail II for recording the details associated with the filing and resolution of inmate complaints. Accordingly, Defendants could not satisfy their burden of proof with respect to Ford or Staggs. *C.f. Peterson*, 2009 WL 523117, at *2 (concluding that defendants met their initial obligation under Fed. R. Civ. P. 56 because, in part, the correctional facility's records did not contain a grievance filed by the plaintiff between the relevant dates). Therefore, the Court finds in favor of Ford and Staggs and against the Defendants with respect to all of Ford's and Staggs' claims that are subject to the PLRA's exhaustion requirement.

### B. WHETHER THE PLAINTIFFS SHOULD BE GIVEN ANOTHER CHANCE TO EXHAUST THEIR ADMINISTRATIVE REMEDIES

The Court now must consider whether Carr, Kress, Ford, and Staggs must be given another chance to exhaust the procedure for filing complaints at Jail II. *Pavey*, 544 F.3d at 742. Ford is no longer an inmate at Jail II and, therefore, the procedure for filing complaints at Jail II is no longer available to him. Accordingly, the Court concludes that Ford may proceed to litigate all of his claims that are subject to the PLRA's exhaustion requirement. With respect to Carr, Kress, and Staggs, although they are still inmates at Jail II, the Court concludes that the Defendants have failed to respond to several of Carr's, Kress', and Staggs' requests to file complaints and have otherwise inhibited their ability to file meaningful complaints. In the Court's opinion, if the Plaintiffs were sent back to Jail II, they would be given the proverbial "runaround" that the Seventh Circuit alluded to in *Pavey*. 544 F.3d at 742. Accordingly, the Court concludes that Carr, Kress, and Staggs may also proceed to litigate all of their claims that are subject to the PLRA's exhaustion requirement.

### V. CONCLUSION

The stay on discovery and briefing in this case (Dkt. No. 57) is **LIFTED**. A telephonic status conference is set before Magistrate Judge Lynch on **Wednesday, July 21, 2010, at 10:30 a.m.** Counsel shall call 317-229-3630. The parties shall confer and file a proposed Case Management Plan by **Friday, July 16, 2010**, which they shall be prepared to discuss at the status conference. The parties shall proceed in accordance with the foregoing findings of facts and conclusions of law.

In addition, Defendants' motion to admit the testimony that was given by Amy Shovan at the hearing held on Plaintiffs' Motion for Rule to Show Cause As to Why Defendant CCA and Warden Jeff Conway Should Not be Held in Contempt and Sanctioned for Retaliation Against Named Plaintiffs (Dkt. No. 12) is **DENIED AS MOOT**. The details surrounding the termination of Amy Shovan's employment at Jail II did not factor into the Court's decision, and the admission of her entire testimony without referencing any particular portion would do little to serve the purpose of a *Pavey* hearing. *See Ducey v. Flagg*, No. 08-cv-0691, 2009 WL 3065045, at *4 (S.D. Ill. Sept. 23, 2009) (Reagan, J.) ("The determination whether Plaintiff exhausted his administrative remedies . . . boils down to a question of credibility.").

IT IS SO ORDERED THIS 2nd day of July, 2010.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distribution to:

William A. Hahn
BARNES & THORNBURG LLP
william.hahn@btlaw.com

Adam Lenkowsky
ROBERTS & BISHOP
alenkowsky@roberts-bishop.com

Paul K. Ogden
ROBERTS & BISHOP
pogden@roberts-bishop.com

Anthony W. Overholt
FROST BROWN TODD LLC
aoverholt@fbtlaw.com

Kenneth T. Roberts
ROBERTS & BISHOP
ktrobatty@aol.com

Tasha Rebecca Roberts
ROBERTS AND BISHOP
troberts@roberts-bishop.com

Michael Rosiello
BARNES & THORNBURG LLP
mike.rosiello@btlaw.com

Marc Pe-Caine Sultzer
OFFICE OF CORPORATION COUNSEL
msultzer@indygov.org