UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ALAN KRESS, RANDY CARR, on their )
own behalf and on behalf of a class of )
those similarly situated, )
                               )
          Plaintiffs, )
                               )
       vs. )     Cause No. 1:08-cv-00431-LJM-DML
                               )
CCA OF TENNESSEE, LLC d/b/a )
CORRECTIONS CORPORATION OF )
AMERICA, WARDEN JEFF CONWAY, )
NEIL PROBST, TIMOTHY LITTLE, )
VIRGINIA LEE and MARION )
COUNTY SHERIFF FRANK )
ANDERSON, )
                               )
          Defendants. )
                               )
                               )

**CCA DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**

     Defendants CCA of Tennessee, LLC, Warden Jeff Conway, Neil Probst, Timothy Little,

and Virginia Lee (collectively the "CCA Defendants"), on their own behalf as well as on behalf

of Defendant Marion County Sheriff Frank Anderson, respectfully request that the Court deny

Plaintiffs Alan Kress and Randy Carr's[1] (collectively referred to herein as "Plaintiffs") motion

seeking certification of a class action pursuant to Fed. R. Civ. P. 23(b)(2) relating to their

confinement at Marion County Jail II ("Jail II").  Plaintiffs seek to certify a class on behalf of

---

[1]  Originally there were five representatives of the putative class.  Plaintiff Timothy Patrick
Treacy's claims were dismissed by the Court because he failed to exhaust his administrative
remedies.  Plaintiffs Eric Staggs and Billy Ford no longer wish to participate as class
representatives.  Accordingly, only Plaintiffs Alan Kress and Randy Carr remain to serve as class
representatives.

"any and all persons currently, or who will be in the future, confined in the Jail #2 facility" to obtain a host of sweeping declaratory and injunctive relief that would encompass virtually every aspect of the operations at Jail II.  For the reasons set forth below, the Court should deny Plaintiffs' motion for class certification.

I.   **Plaintiffs' individual claims for injunctive relief are moot because they were long ago transferred out of Jail II, and accordingly they cannot serve as class representatives seeking injunctive relief on behalf of a class.**

It is undisputed that neither of the Plaintiffs is still incarcerated in Jail II.  *See* Affidavit of Warden Jeff Conway, attached hereto as Exhibit A.  Rather, both Plaintiffs were transferred from Jail II back in 2008.  *Id.*  Plaintiffs' individual claims for injunctive relief long ago became moot upon their release from Jail II.

It is well established law in the Seventh Circuit that when an inmate is seeking injunctive relief relating to conditions in a correctional facility, the inmate's transfer from that facility moots the need for the requested injunctive relief, and thus necessarily terminates the inmate's claim.  *See, e.g.*, *Morris v. Kingston*, 368 Fed. Appx. 686, 689 (7th Cir. 2010) (when "'a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot.'") (quoting *Lehn v. Holmes,* 364 F.3d 862, 871 (7th Cir. 2004) (also stating that the mootness of a prisoner's claim for injunctive relief upon his release is an "uncontroversial position")); *Koger v. Bryan*, 523 F.3d 789, 804 (7th Cir. 2008) (an inmate's "request for injunctive relief has been rendered moot by his release from prison"); *Santiago v. Walls*, 196 Fed. Appx. 416, 417 (7th Cir. 2006) (denying inmate's motion for injunctive relief in part because it was mooted by his transfer from the facility); *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (a prisoner's claims seeking injunctive and declaratory relief relating to alleged retaliatory conduct at a correctional facility were mooted upon his transfer from that facility).

2

Further, the fact that the class action was not certified prior to the claims of the class representatives becoming moot requires dismissal of the lawsuit. *See, e.g.*, *Wiesmueller v. Kosobucki*, 513 F.3d 784, 786 (7th Cir. 2008) ("If . . . the named plaintiff's claim becomes moot before the class is certified, the suit must be dismissed because no one besides the plaintiff has a legally protected interest in the litigation."); *Bertrand v. Maram*, 495 F.3d 452, 456 (7th Cir. 2007) ("if the would-be representative's claim becomes moot before certification, then the case must be dismissed").

Given that the class representatives' claims became moot before certification of any class, this case cannot now be certified as a class action, but rather is subject to dismissal. Accordingly, it is not even necessary to delve into an analysis of whether Plaintiffs have met their burden of proof under Rule 23 to resolve the class certification issue. No class certification is possible given that it is undisputed that Plaintiffs' claims are moot, and thus they cannot serve as class representatives.

### A.      Plaintiffs have not alleged, argued or proven that their claims are "capable of repetition, yet evading review."

Plaintiffs may attempt to circumvent this legal defect by attempting to argue that this case should proceed under the theory that it is one that falls into the exception category of "capable of repetition, yet evading review." To do so, however, Plaintiffs were required to prove that two elements were satisfied. First, they needed to prove that their claims are "'so inherently transitory that the trial court [did] not have enough time to rule on a motion for class certification before the proposed representative's individual interests expire[d]." *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994) (quoting *County of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991)). Second, Plaintiffs were required to prove that they "will again be subject to the alleged illegality." *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 110, (1983); *see also Olson v.*

3

*Brown*, 2009 U.S. Dist. LEXIS 52772, *17 (N.D. Ind. June 22, 2009) (discussing elements of "capable of repetition, yet evading review" and dismissing inmate's class action because he failed to meet his burden of proof as to those elements).

Here, Plaintiffs have neither alleged in their complaint nor argued in their motion for class certification that either of these elements have been satisfied. More importantly, they have offered no evidence to meet their burden of proof on either of these elements. Plaintiffs have never sought to amend or supplement either their complaint or their motion for class certification with any allegations, argument or evidence attempting to satisfy these elements in the nearly two years since they left Jail II.[2] Plaintiffs cannot now attempt to belatedly salvage their claims under this theory, nor can their claims survive on unsupported speculation that these elements could be met. *See Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009) (affirming dismissal of inmate's claim for injunctive relief as moot and noting that "we shall not assume without reason that [plaintiff] might once again find himself an inmate of the same local institution and find himself subject to the restrictions of which he complains here").

In short, Plaintiffs' individual claims for injunctive relief are now moot as a matter of law. Plaintiffs have offered no argument or evidence in their motion for class certification that would permit them to proceed as class representatives on the theory that their claims are "capable of repetition, yet evading review." As such, Plaintiffs cannot serve as class representatives given that they themselves cannot obtain the equitable relief they are seeking. Thus, their motion for class certification must necessarily be denied.

---

[2] Plaintiffs cannot legitimately argue that they have not had an opportunity to develop evidence on this issue. This Court established a period for conducting discovery regarding class certification that ended on September 1, 2010. Plaintiffs conducted no discovery relating to this issue, nor have they ever presented any evidence demonstrating that their claims for injunctive relief constitute claims that are capable of repetition, yet evading review.

II.     **Plaintiffs have offered nothing more than unsupported legal conclusions in alleging that the requirements of Rule 23 have been satisfied, and thus have failed to satisfy their burden of proof on each element required by Rule 23 for certifying a class action.**

Even if Plaintiffs possessed viable equitable claims that they could assert on behalf of the proposed class – which they do not – they still have not met their burden of pleading and/or proving that Rule 23's elements for certifying a class action have been satisfied.  As the Court is well aware, "a class may only be certified if the court is convinced, after a rigorous analysis, that the requirements of Fed. R. Civ. P. 23 have been satisfied."  *Haynes v. Dart*, 2009 U.S. Dist. LEXIS 65742, at *8 (N.D. Ill. July 29, 2009) (citing *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 161 (1982)).  It is Plaintiffs' burden to establish that those elements have been satisfied and that certification is appropriate.  *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir. 1993).

In conducting its analysis, "the court may make whatever factual or legal inquiries are necessary to determine whether Rule 23's prerequisites are satisfied."  *Haynes*, 2009 U.S. Dist. LEXIS 65742, at *8.  *See also Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 676-77 (7th Cir. 2001) (the court must often probe beneath the pleadings to conduct the inquiries identified in Rule 23 and to exercise its discretion on class certification).  Although the Court does not rule upon the merits of Plaintiffs' claims at the class certification stage, the class certification analysis necessarily touches upon the factual and legal basis for the claims of the proposed class.  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982) (class certification determinations "generally involve[] considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action"); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.12 (1978) ("Evaluation of many of the questions entering into determination of class action questions is intimately involved with the merits of the claims.").

Plaintiffs' amended complaint with regard to their "class action allegations" sets forth nothing more than unsupported conclusions of law.  For example, with regard to the element of typicality, Plaintiffs' amended complaint says nothing more than that the "claims of the representative Plaintiffs are typical of those of the class."  Amended Complaint ¶ 21c.  Likewise, Plaintiffs' amended complaint simply states with regard to Rule 23's adequacy requirement that the "representative parties will fairly and adequately protect the interests of the class."  *Id.* ¶ 21d. Plaintiffs also did nothing more in their amended complaint than proclaim, without any factual support, that "the requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure are met in this cause in that Defendants have acted, and refused to act, on grounds generally applicable to the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole."  *Id.* ¶ 22.

Plaintiffs' motion and supporting brief seeking class certification, like their amended complaint, also fail to provide the requisite factual support for their conclusory class allegations. Nor did Plaintiffs produce any evidence with their motion demonstrating that any of the elements required by Rule 23 for class certification have been satisfied.  Rather, Plaintiffs' motion and brief essentially provide nothing more than a recitation of Rule 23's elements, with unsupported legal conclusions asserting that those elements have been satisfied.  For example, with regard to the "generally applicable" requirement of Rule 23(b)(2), Plaintiffs' brief provides no factual or evidentiary support, but only the unsupported legal conclusion that "Defendants have acted or refused to act on grounds generally applicable to the class and the requirement [sic] of Rule 23(b)(2) are met."  Plaintiffs' Class Certification Memorandum at 6.

In short, the only thing that Plaintiffs have provided to the Court to meet their burden of satisfying Rule 23's elements are recitations of those elements and unsupported legal conclusions

proclaiming that they have been met.  That is not sufficient to survive a motion to dismiss, let alone to demonstrate that certification is appropriate, given that the Court cannot simply accept Plaintiffs' unsupported legal conclusions as true.  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  *Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice*" (emphasis added, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The legal insufficiency of unsupported legal conclusions of the type offered by Plaintiffs applies with equal force in the class action context.  *See, e.g.*, *Landry v. Peter Pan Bus Lines, Inc.*, 2009 U.S. Dist. LEXIS 129873, at *3 (D. Mass. Nov. 20, 2009) (rejecting class action allegations that were unsupported legal conclusions that did not create a "plausible entitlement" to any of the proposed class members:  "[plaintiff] alleges only the legal conclusion, that employees were not paid overtime duly owed, and legal conclusions are not entitled to an assumption of truth").[3]

Plaintiffs have failed to offer facts or evidence to meet their burden of proof with regard to the essential elements under Rule 23.  Rather, Plaintiffs have offered nothing more than unsupported legal conclusions claiming that those elements have been met.  The Court needs more, however, than unsupported legal conclusions to certify a class action.[4]  Plaintiffs have

---

[3]  The *Landry* court applied *Twombly* and *Iqbal* in the context of a motion to dismiss class allegations rather than a motion for class certification.  It necessarily follows, however, that if Plaintiffs failed to adequately plead their class allegations by asserting only legal conclusions, they certainly cannot have satisfied their burden of proof on class certification by relying upon those same unsupported legal conclusions.

[4]  Plaintiffs may respond to this point by citing and relying upon older cases in which courts have accepted unsupported legal conclusions regarding the elements of Rule 23 in certifying class actions.  Any cases certifying class actions based on nothing more than unsupported legal conclusions cannot be considered good law in light of the requirements of *Iqbal* and *Twombly*.

failed to meet their burden of proof with regard to each of the elements required by Rule 23 for class certification, and their motion must necessarily be denied for this reason as well.

**III.    The evidence precludes Plaintiffs from satisfying the elements of Rule 23(b)(2) for certifying a class action seeking injunctive relief.**

Plaintiffs are seeking to certify this class action solely under Rule 23(b)(2), which requires Plaintiffs to demonstrate that the Defendants "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Thus, Plaintiffs had the burden of establishing two elements under Rule 23(b)(2):  (1) the alleged wrongful acts or omissions of the Defendants were "generally applicable to the class," and (2) the injunctive relief requested is appropriate on a class wide basis.  Plaintiffs failed to meet their burden of proof as to both of these elements, and the facts of this case, coupled with the nature of Plaintiffs' claims, affirmatively preclude them from doing so.

**A.    Plaintiffs have failed to meet their burden of proving that the claims of the class representatives are "generally applicable" to the proposed class.**

Under Rule 23(b)(2), the Court should closely examine the relationship among the proposed class, the alleged injuries, and the relief sought.  *Vallario v. Vandehey*, 554 F.3d 1259, 1267 (10th Cir. 2009).  If the "equitable relief is not uniformly applicable to the class, and thus time-consuming inquiry into individual circumstances or characteristics is required, little is gained from the case proceeding as a class action."  *Id.* (citing *Gen. Tel. Co.*, 457 U.S. at 155 (the purpose of class actions is to "save[] the resources of both the courts and the parties"); *see also Haynes v. Dart*, 2009 U.S. Dist. LEXIS, at *27 (N.D. Ill. July 29, 2009) ("If equitable relief is not uniformly applicable to the class, and inquiry into individual circumstances is required, there

_____

In addition, certifying class actions seeking sweeping injunctions of the type sought in this case is no longer appropriate.  *See* Section III(B) of this brief below.

is little to be gained from proceeding as a class action.").  Under Rule 23(b)(2), the injuries sustained by the class must be "sufficiently similar that they can be addressed" in a "single injunction that need not differentiate between class members." *Vallario*, 554 F.3d at 604.

The "generally applicable" requirement of Rule 23(b)(2) can be met where the class members were uniformly subjected to a particular policy or a systemic practice that allegedly caused injuries to both the class representatives and the class members. *See, e.g.*, *Colbert v. Blagojevich*, 2008 U.S. Dist. LEXIS 75102, *27-28 (N.D. Ill. Sep. 29, 2008) (certifying Rule 23(b)(2) class action on behalf of class that that was "systematically" denied "the opportunity to be informed about their treatment options and to move from nursing facilities into the community" due to defendants' policies).  A review of Plaintiffs' claims, however, reveal no such generally applicable practices or policies in this case.  Rather, Plaintiffs are attempting to certify a class predicated on a host of isolated, individualize claims that preclude class certification under Rule 23(b)(2).

For example, Plaintiffs assert claims on behalf of the entire class relating to allege failures to provide "proper and adequate medical care" that Plaintiffs contend violate both the United States Constitution (*i.e.*, deliberate indifference claims) and the Indiana Administrative Code (specifically 210 IAC 3-1-11).  *See* Plaintiffs' Amended Complaint ¶¶ 84, 85.  Plaintiffs' medical claims, however, do not relate to some generally applicable policy or systemic practice, but rather arise from specific isolated and individual instances when they contend *they* did not receive proper medical treatment at Jail II.

Mr. Kress' medical claims arise from three specific instances during his incarceration at Jail II when he allegedly experienced problems with his medications.  Deposition of Alan Kress at 41-42 (attached hereto as Exhibit B).  Mr. Kress does not allege that he was ever

systematically denied or deprived of his medications.  Rather, he admits that no one at Jail II

ever specifically refused to provide him with his medications:

> Q.  Okay.  But on any occasion when you presented for pill call at Jail II, were
>      you ever denied or refused your medications?
>
> A.  I will have to think about that.  It seems like there was a problem with -- no,
>      sir, I don't believe so.  I –

Kress Dep. at 31-32.  Mr. Kress' medical claims in this case relate to isolated problems with his

medications that are unique to him.  For example, Mr. Kress contends that he received an

incorrect medication for a three-day period during his incarceration at Jail II that ultimately was

corrected.  He does not contend, however, that this was a systemic problem that regularly

occurred at Jail II to him, or to any other inmates.  Rather, Mr. Kress readily admitted that this

problem occurred on only one occasion during his incarceration:

> Q.  All right.  And it was -- that one occasion for, you said, approximately three
>      days when you were receiving the wrong medication, was that the only
>      occasion that you're aware of during your incarceration at Marion County
>      Jail II when you received an incorrect medication?
>
> A.  Yes.

Kress Dep. at 22.

Mr. Kress also alleges that he received an inadequate amount of his medications at Jail II

after a change was made to reduce pill calls for some inmates down from three times a day to

two times a day.  Mr. Kress admitted, however, that he was aware that other inmates continued

to received certain medications three times a day at Jail II:

> Q.  Were you aware if other inmates were still receiving pills or their medications
>      three times a day during that time period?
>
> A.  Yeah, the only ones that -- I was aware of that.  And the only ones I was
>      aware of was like blood pressure or maybe diabetic or something like that.
>      Yeah, I believe so, or I believe some did get them, their meds three times
>      day.  If it was for a heart problem, maybe, or something like that, I think
>      so.

Kress Dep. at 26.  As such, this claim again boils down to whether Mr. Kress's individual allegations could give rise to any relief *for him* regarding an alleged problem with the particular medication dosages he was receiving.

Mr. Kress' final medical claim relates to a period of approximately 7 to 10 days during his incarceration at Jail II when one of his medications, Risperdal, was out of stock and he was not receiving it along with his other medications.  Mr. Kress raised this issue with medical staff at Jail II, the medication was ordered, and the problem was corrected.  Kress Dep. at 35-36. Again, Mr. Kress does not contend that the ordering issue that occurred during this limited period was systemic or generally applicable to all inmates at Jail II.  He admitted that he is not aware of any other inmates at Jail II who experienced a similar problem regarding the receipt of Risperdal:

> Q.   Are you aware of any other inmates at Marion County Jail II who had been prescribed Risperdal that were not receiving the Risperdal?
>
> A.   No.  No, sir.

Kress Dep. at 36.

Likewise, Mr. Carr's medical claims relate to specific problems he allegedly experienced. Mr. Carr claims that he had problems on particular occasions obtaining his blood pressure medications, and that he did not receive proper medical care for an injured ankle.  Deposition of Randy Carr at 47 (attached hereto as Exhibit C).  His medication claims do not relate to some generally applicable policy or practice that prevented him from obtaining his medications. Rather, he testified that the medication problems he allegedly experienced were restricted to a finite number of occasions, and that on all other occasions he did in fact receive his blood pressure medications.  Carr Dep. at 22-23.

Mr. Carr also does not contend that there is some generally applicable policy or practice that prohibited him from receiving treatment for his injured ankle. Rather, Mr. Carr admits that he was seen in the medical department for treatment on his ankle. His claim is predicated on his belief that when he was seen, the medical treatment he received was inadequate – a completely individual claim. Carr Dep. at 29-31.

Plaintiffs' own testimony confirms that their medical claims do not relate to any "generally applicable" policy or practice that prohibited them from receiving the medical treatment they sought. Plaintiffs admit that they generally received their medications and medical treatment. Their claims relate exclusively to isolated and individual instances where mistakes allegedly occurred in their medical treatment or where they were dissatisfied with the particular treatment they received.

While these allegations might give rise to individual damages claims on behalf of these two Plaintiffs, they are not proper claims upon which to base a Rule 23(b)(2) class action. In the absence of any policy or systemic practice "generally applicable" to the class, a class action would degenerate into a series of individual inquiries regarding Plaintiffs' claims, and those of any class members. This is not a proper class action under Rule 23(b)(2). A "class should not be certified for injunctive relief if relief specifically tailored to each class member would be necessary to correct defendants' allegedly wrongful conduct." *Haynes*, 2009 U.S. Dist. LEXIS 65742, at *28 (citing 5 *Moore's Fed. Prac.* § 23.43(2)(b) at 23-195 (3d ed. 2000)).

Courts in this circuit also routinely address the problem of individualized medical claims in class actions in the context of Rule 23's typicality requirement, and deny class certification on that basis. That is because "cases involving personal injury and inadequate medical care are particularly fact specific." *Smith v. Sheriff of Cook County*, 2008 U.S. Dist. LEXIS 36884, at *5

(N.D. Ill. May 6, 2008) (denying certification of class regarding dental treatment at jail because individual factual issues regarding treatment predominated and plaintiffs accordingly failed to satisfy commonality and typicality requirements); *Orr v. Elyea*, 2009 U.S. Dist. LEXIS 106574, at *16-17 (N.D. Ill. Nov. 16, 2009) (denying class certification challenging department of corrections policy addressing hepatitis treatment in part because claims were not typical and required individual examination: "While all the Plaintiffs' claims are ostensibly based on deliberate indifference to serious medical needs, none of the claims are typical. . . . every Plaintiff's individual circumstances are going to be different in terms of their" condition and treatment); *Wrightsell v. Sheriff of Cook County*, 2009 U.S. Dist. LEXIS 14521, *10 (N.D. Ill. Feb. 19, 2009) (denying class certification challenging dental treatment at jail because individual factual issues regarding treatment would predominate over any common issues). Accordingly, the individualized nature of Plaintiffs' medical claims further preclude Plaintiffs from meeting their burden of proof under Rule 23(a)(3) that their claims are typical.

As another example, the same individualized inquiry would be required to address Plaintiffs' claims relating to receiving and sending mail at Jail II. *See* Amended Complaint ¶¶ 44-50. Neither Mr. Kress nor Mr. Carr contend that there was any generally applicable policy or practice that prohibited or restricted their ability, or the ability of other inmates, to send or receive mail generally. Rather, their allegations relate to isolated instances of alleged problems with their mail.

Mr. Kress' claim relating to mail arises solely from a single occasion when he contends that one letter from his public defender was three to four days late in arriving to him. Kress Dep. at 42-43. He admitted that he had no other issues or problems receiving mail at Jail II that would evidence any systemic problem:

> Q.  Did you have any other occasions when you had any problems receiving mail at Marion County Jail II?
>
> A.  No.

Kress Dep. at 44-45.  Nor did Mr. Kress ever experience any problems sending any mail from Jail II:

> Q.  Did you ever have any -- experience any problems sending either legal or personal mail from Jail II?
>
> A.  Not that I recall, no.

Kress Dep. at 45.

Mr. Carr's claims relating to alleged problems with mail at Jail II likewise do not arise from a generally applicable policy or practice.  His mail claim is predicated on the allegation that two particular letters he purportedly sent to Plaintiffs' counsel were not received.  He is not aware of any other problems with any of the other outgoing mail he sent while incarcerated at Jail II.  Carr. Dep. at 55-57.  The only problem he allegedly experienced regarding the receipt of mail at Jail II was a single occasion when a magazine was confiscated because of a person making a hand gesture on the cover of the magazine.  Carr. Dep. at 58.

"[U]nder Rule 23(b)(2) the class members' injuries must be sufficiently similar that they can be addressed in an single injunction that need not differentiate between class members." *Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008). Plaintiffs' testimony confirms that such similarity does not and cannot exist in this case.  This is not a case where Plaintiffs are challenging generally applied policies or systemic practices that are generally applicable to all inmates at Jail II.  Rather, Plaintiffs' claims arise out of specific, individualized instances during their incarceration at Jail II that are unique to them.  A "class should not be certified for injunctive relief if relief specifically tailored to each class member would be necessary to correct defendants' allegedly wrongful conduct."  *Haynes*, 2009 U.S. Dist.

14

LEXIS 65742, at *28.  *See also Vallario*, 554 F.3d at 1268 (reversing district court's certification of Rule 23(b)(2) class on behalf of "all present and future inmates" regarding a "wide range of behavior" because plaintiffs failed to demonstrate that the requested injunctive relief was "'conceivable and manageable without embroiling' the district court 'in disputes over individualized situations'") (quoting *Shook*, 543 F.3d at 608).

Plaintiffs have not met their burden of proving that the claims at issue in this case are generally applicable to the class, and their testimony precludes them from being able to do so. Accordingly, this case cannot be certified as a class action pursuant to Fed. R. Civ. P. 23(b)(2).

**B.      Plaintiffs also have not proven and cannot prove that the injunctive relief they are seeking is appropriate on a class-wide basis.**

To satisfy their burden of proof under Rule 23(b)(2), Plaintiffs also must demonstrate that the injunctive relief they are seeking is appropriate on a class wide basis.  Plaintiffs' amended complaint asserts extremely broad and vague allegations of improper conduct at Jail II.  They allege a general "failure to provide proper and adequate medical care," a general failure to "provide safe and humane conditions," general failures in sending and receiving inmates' mail, general violations of HIPAA, among several other claims.  *See generally* Plaintiffs' Amended Complaint.

"[G]iven the breadth of unlawful acts alleged here, plaintiffs must describe the desired equitable relief in sufficient detail for the court to determine whether classwide injunctive relief is potentially appropriate and manageable."  *Haynes*, 2009 U.S. Dist. LEXIS 65742, at *27 (also noting that at "the class certification stage, the injunctive relief sought must be described in reasonably particular detail to satisfy the requirements of Rules 23(b)(2) and 65(d)").  *See also Shook*, 543 F.3d at 608 ("While we do not propose that plaintiffs must come forward with a finished injunction at the class certification stage, they must be able to demonstrate that such

injunctive relief -- relative to the class -- is conceivable and manageable without embroiling the court in disputes over individualized situations and constantly shifting class contours.").

Plaintiffs' motion for class certification provides no description or explanation regarding the injunctive and declaratory relief they are seeking on behalf of the class. Rather, Plaintiffs' amended complaint provides the only insight as to the equitable relief they hope to obtain. A review of the requested relief, however, raises far more questions than answers as to how such relief could ever be granted and managed on a class wide basis:

108. Enter a declaratory judgment that the actions and inactions of the Defendants described herein violate the 14th and 8th Amendments to the United States Constitution.

109. Enter a declaratory judgment that the actions and inactions of the defendants described herein violate the Indiana Administrative Code, in particular 210 IAC 3-1 et seq.

110. Enjoin the Defendants from continuing to violate federal and state law regarding the medical care and treatment of the Jail #2 inmates.

111. Enjoin the Defendants from continuing to violate federal and state law regarding the unsafe and inhumane conditions at the Jail #2 facility.

112. Enjoin the Defendants from continuing to violate federal and state law regarding the failure of CCA to process inmate administrative grievances at the Jail #2 facility, including not providing inmates with written responses to those grievances.

113. Enter an order finding CCA's conduct in this case so egregious, yet so likely to be repeated given CCA's history, as to justify judicial termination of CCA's contract to run the Jail #2 facility.

114. Order CCA to pay substantial punitive damages as permitted by law.

115. Order Sheriff Anderson to pay punitive damages as permitted by law.

116. Hold Sheriff Anderson in contempt if the issues at Jail #2 raised in this Complaint are not promptly addressed.

117. Grant counsel for the Plaintiffs and their represented class reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988 and other applicable law.

118.    Award all other proper relief.

Plaintiffs' Amended Complaint ¶¶ 108-118.

Plaintiffs have provided the Court with no explanation as to how the Court could possibly enter and manage a class wide injunction on these broad topics.  Rather, Plaintiffs are improperly attempting to explain the injunctive relief they seek on behalf of the class at a "'stratospheric level of abstraction'" that fails to satisfy Rule 23(b)(2).  *Vallario*, 554 F.3d at 1268 (quoting *Shook*, 543 F.3d at 604).

First it must be noted that with regard to several of Plaintiffs' claims, they have not identified the injunctive relief they are seeking even in cursory fashion in either their amended complaint or their class certification briefing.  The only injunctive relief they have identified relates to medical care, "unsafe and inhumane" conditions, and the grievance policy at Jail II.  *See* Amended Complaint ¶¶ 110-112.  Those requests for injunctive relief relate to only Counts 1, 2, 3, 4, 5 and 6 against the CCA Defendants and Counts 13, 14 and 15 with regard to the Marion County Sheriff.  With regard to all of Plaintiffs' other claims, they have wholly failed to identify any requested injunctive relief – let alone injunctive relief that is appropriate on a class wide basis – and thus have failed to meet their burden of proof as to those claims under Rule 23(b)(2).

Plaintiffs do seek an injunction on behalf of the entire class of current and future inmates aiming to foreclose Jail II from "violat[ing] federal and state law regarding the medical care and treatment of the Jail #2 inmates."  Plaintiffs' Amended Complaint ¶ 110.  It is difficult to imagine a more broad request for injunctive relief as it pertains to medical treatment.  If Plaintiffs were permitted to certify a class for the purposes of obtaining injunctive relief of this nature, the Court would essentially be responsible for overseeing every aspect of the medical care provided to any inmate at Jail II for the foreseeable future.  For example, every medication

17

error, however small, could potentially constitute a violation of the injunction Plaintiffs are

seeking on behalf of the class.  Such mistakes are inevitable at any correctional facility, hospital,

or any other medical facility responsible for providing care to thousands of patients each year.

Accordingly, if an inmate believes that he received his medications an hour later than he should

have, by way of example, and his rights had accordingly been violated, it would require the

Court to become embroiled in that situation (and any other number of situations like it) if

Plaintiffs are permitted to certify a class for purposes of seeking such broad injunctive relief and

such an injunction is entered.

    In essence, Plaintiffs are asking the Court to oversee, in detail, the operations of the

medical department at Jail II.  The Supreme Court, for good reason, has specifically directed

courts to avoid such entanglements with the operations of a correctional facility.  In *Lewis v.

Casey*, 518 U.S. 343 (1996), the Supreme Court struck down an injunction entered by a district

court on behalf of a class of inmates that was far more narrow than that sought by Plaintiffs in

this case.  The injunction there required changes with respect to a prison system's law libraries

and legal assistance programs.  The Supreme Court reversed the injunction in part because the

district court's order was "enmeshed in the minutiae of prison operations."  *Id.* at 363.  The

Supreme Court specifically directed courts to avoid such entanglements:

> It is for the courts to remedy past or imminent official interference with individual
> inmates' presentation of claims to the courts; it is for the political branches of the
> State and Federal Governments to manage prisons in such fashion that official
> interference with the presentation of claims will not occur.  Of course, the two
> roles briefly and partially coincide when a court, in granting relief against actual
> harm that has been suffered, or that will imminently be suffered, by a particular
> individual or class of individuals, orders the alteration of an institutional
> organization or procedure that causes the harm.  But the distinction between the
> two roles would be obliterated if, to invoke intervention of the courts, no actual or
> imminent harm were needed, but merely the status of being subject to a
> governmental institution that was not organized or managed properly.  *If -- to take
> another example from prison life -- a healthy inmate who had suffered no*

18

> *deprivation of needed medical treatment were able to claim violation of his*
> *constitutional right to medical care, see Estelle v. Gamble, 429 U.S. 97, 103, 50*
> *L. Ed. 2d 251, 97 S. Ct. 285 (1976), simply on the ground that the prison medical*
> *facilities were inadequate, the essential distinction between judge and executive*
> *would have disappeared: it would have become the function of the courts to*
> *assure adequate medical care in prisons.*

*Id.* at 349-50 (emphasis added).

Plaintiffs seek an even broader injunction in asking this Court to enjoin the "Defendants from continuing to violate federal and state law regarding the unsafe and inhumane conditions at the Jail #2 facility." Plaintiffs' Amended Complaint ¶ 111. Any "condition" at Jail II that an inmate believes violates his federal or state rights in any manner, however small or trivial, will again require this Court's involvement. This will essentially render this Court the administrator of Jail II's operations as they relate to any "condition" at the facility. Again, the Supreme Court has concluded that such a role is not appropriate for a court. *Lewis*, 518 U.S. at 363.

The same is true with regard to Plaintiffs' request for an injunction regarding the grievance process at Jail II. Plaintiffs are inviting this Court to improperly embroil itself in the minutiae of the operation of Jail II's grievance process. If Plaintiffs' class is certified and they obtain the relief they are seeking on behalf of the class, every occasion when an inmate contends that he did not receive a grievance form in a timely manner, or Jail II's response to a grievance was somehow inadequate, or any number of other possible issues that could arise from the grievance process, could constitute violations of the injunction that would require the Court's involvement. Again, such a result is improper and must be avoided by the Court.

Plaintiffs' efforts to obtain such far reaching injunctive relief not only run afoul of the directives from the Supreme Court, but also conflict with directives from Congress. Specifically, the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626, prohibits courts from entering broad, sweeping prospective relief of the type sought by Plaintiffs:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. *The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.* The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A) (emphasis added).  A class seeking injunctive relief asking the Court to oversee virtually every aspect of Jail II's operation certainly is not "narrowly drawn," and is barred by the PLRA.

Plaintiffs' efforts to obtain class status for purposes of obtaining injunctive relief is further complicated by the fact that several of the claims they are asserting are not viable causes of action upon which injunctive relief could rest.  For example, Plaintiffs have attempted to assert claims seeking injunctive relief relating to the grievance process at Jail II under both the PLRA (Count 5 of Plaintiffs' Amended Complaint) and under the Indiana Jail Standards (Count 6).

There is nothing in the PLRA establishing or even implying that Congress intended to create a cause of action relating to alleged violations of a jail's grievance process.  To the contrary, the PLRA expressly provides with regard to states that failure "to adopt or adhere to administrative grievance procedures does not give rise to a cause of action under the PLRA."  42 USCS § 1997e(b).  *See, e.g.*, *Taylor v. Luttrell*, 2008 U.S. Dist. LEXIS 75393, at *14-15 (W.D. Tenn. Aug. 27, 2008) ("The fact that there is no effective grievance system for inmates at the Jail may be sufficient to defeat a motion to dismiss the complaint, pursuant to 42 U.S.C. § 1997e(a), for failure to exhaust administrative remedies, but it does not give rise to an independent cause of action."); *Hart v. Whalen*, 2008 U.S. Dist. LEXIS 71960 at *48 (M.D. Pa. July 29, 2008) ("Even if the prison provides for a grievance procedure . . . violations of those procedures do not amount

to a civil rights cause of action."); *Roberson v. S.C. Dep't of Corr.*, 2010 U.S. Dist. LEXIS 16370 at \*33-34 (D. S.C. Jan. 27, 2010) ("As to the Plaintiff's claims regarding the grievance procedure, these allegations are without merit.  Even if the Defendants failed to respond, or timely respond, to the Plaintiff's grievances, the Plaintiff has not stated a constitutional claim.  The law is well-settled that there is no constitutional right to a grievance procedure."); *Brown v. Eagen*, 2009 U.S. Dist. LEXIS 24876 at \*40 (N.D.N.Y. Mar. 26, 2009) ("Inmates do not have a constitutional right to have grievances processed or to ensure that grievances are processed properly.").

The same is true with regard to Plaintiffs' claims relating to the grievance procedure under the Indiana Jail Standards (Count 6).  *See, e.g.*, *Malone v. Becher*, 2003 U.S. Dist. LEXIS 15790, at \*62 (S.D. Ind. Aug. 29, 2003) (plaintiffs did not possess a private cause of action for alleged violations of the Indiana Jail Standards); *Tyson v. Grant County Sheriff*, 2007 U.S. Dist. LEXIS 34570 (N.D. Ind. May 9, 2007) (the Indiana Jail Standards did not create a private cause of action for inmates in class action seeking injunctive relief for alleged violations of the Jail Standards).

Plaintiffs also allege "violations" of "Indiana law" by failing to report "medical errors," (Plaintiffs' Amended Complaint ¶ 96), and "violations" of the United States Constitution on the theory that CCA pays "financial incentives" to administrators to "block the grievance process" (Plaintiffs' Amended Complaint ¶ 97).  The most ludicrous of their claims, however, is their request that the Court engage in "judicial termination" of the contract between CCA and the Marion County Sheriff (Amended Complaint ¶ 113).  Plaintiffs clearly do not possess a cause of action to obtain "judicial termination" of a lawful contract, nor does the Court have jurisdiction

to engage in such "judicial termination."[5]  In short, Plaintiffs cannot predicate class wide injunctive relief on such non-viable claims.

For all of these reasons, Plaintiffs have not satisfied their burden of proof under Rule 23(b)(2), and they cannot do so given the facts of this case and the nature of their claims.

**IV.    The class representatives also have not experienced or been injured by several of the specific conditions alleged in Plaintiffs' amended complaint, and accordingly cannot serve as proper class representatives with regard to many of the conditions claims they are alleging.**

Plaintiffs' amended complaint asserts several conditions that they generally allege occurred at Jail II and that generally caused "injury" to unidentified inmates at Jail II.  The amended complaint, however, does not attempt to specifically attribute any of those alleged conditions to either of the Plaintiffs, or to any other inmates a Jail II.  Nor have Plaintiffs affirmatively demonstrated that they experienced and were injured by many of the conditions alleged in the amended complaint.  A review of their testimony reveals that Plaintiffs did *not* experience many of the specific conditions and actions on which they are attempting to obtain injunctive relief, nor were they allegedly injured by many of those conditions or actions.

For example, Plaintiffs allege a host of "unsafe and inhumane" conditions at Jail II that the class representatives and the proposed class allegedly experienced.  These include such things as "razors left in an open wastebasket," "security cameras throughout the facility that do not work properly," "a shortage of radios for CCA staff so as to contact someone in the event of an emergency," "the escorting of inmates by untrained and unarmed individuals, such as nurses, leading to possible hostage situations," "mold growing in vents and on walls and floors at Jail #2," "insect infestation at the facility including the presence of spiders, roaches, gnats and fruit

---

[5]  It is also worth noting that even if the Court could "judicially terminate" the contract, which it obviously cannot do, class certification would not be needed to do so.

flies," "heating and air conditioning systems that do not work," "a lack of ventilation in the facility," providing inmates with "tattered clothing and shoes with holes that often do not fit," and forcing "inmates to shovel raw sewage at the facility when a sewer line broke."  Plaintiffs' Amended Complaint ¶¶ 38, 40.

First, these examples further illustrate for the Court the inherent problems discussed above with certifying a class action directed at obtaining injunctive relief regarding these and all other "conditions" at Jail II.  Again, if Plaintiffs were permitted to proceed in the manner they are requesting and they were successful, the Court would be responsible for addressing these and any other condition at Jail II that an inmate might deem "unsafe" or "inhumane."

Second, the two class representatives testified that they never experienced or were injured by virtually any of these alleged conditions at Jail II.  Accordingly, they lack standing to assert such claims on behalf of the class.  *See, e.g.*, *Keele v. Wexler*, 149 F.3d 589, 592-93 (7th Cir. 1998) ("'To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents.'") (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)).

Mr. Carr did not testify that he experienced or was injured by any of these conditions at Jail II.  Rather, the only "condition" at Jail II that he alleges caused him any injury was his being placed in an intake cell upon his arrival at Jail II that he believes was overcrowded and did not contain adequate facilities – which is not even identified as one of the conditions alleged to be at issue in Plaintiffs' amended complaint:

> Q.   Other than being placed in these intake cells upon your arrival at Marion
>       County Jail II, are you alleging that there are any other conditions at Jail II
>       that were improper or inhumane?

A.   Besides the fact that they don't feed you for 18 hours straight or let you drink anything, and have 20 -- 20, 30 of them?  No, I guess not.  I guess that's about it.

Carr Dep. at 54.  He identified none of the "unsafe" and "inhumane" conditions at Jail II that are allegedly at issue in this case.  Accordingly, having never experienced or been injured by any such conditions himself, Mr. Carr cannot serve as a proper or adequate class representative seeking injunctive relief for such conditions.

Mr. Kress's testimony was little different.  He testified about only seeing gnats on occasions at Jail II.  Kress Dep. at 46-47.  He also testified that he saw what he believes was mold in some of the bathrooms at Jail II on particular occasions, but he admitted he was in no way injured by it.  Kress Dep. at 63-65.  Further, he testified that he saw a "sewage leak" on a single occasion, but he was not involved in cleaning it up as alleged in Plaintiffs' amended complaint.  Kress Dep. at 47-48.  Mr. Kress did not testify that he ever experienced or was injured by the host of other alleged "unsafe" and "inhumane" conditions at Jail II alleged in the amended complaint.  Accordingly, he, like Mr. Carr, cannot serve as a proper class representative with regard to virtually all of the allegedly "unsafe" and "inhumane" conditions alleged to be at issue in this case.

## V.   Conclusion

For all of the reasons set forth above, the CCA Defendants, on their own behalf and on behalf of the Marion County Sheriff, respectfully request that the Court deny Plaintiffs' motion seeking class certification, and to award the CCA Defendants all other just and proper relief.

s/ William A. Hahn
William A. Hahn (#21942-71)
Michael Rosiello (#6203-49)
BARNES & THORNBURG LLP
11 South Meridian Street

Indianapolis, IN 46204
Telephone:      317-231-1313
Facsimile:      317-231-7433
E-mail:  whahn@btlaw.com
mrosiello@btlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22d day of October, 2010, a copy of the foregoing was filed

electronically.   Notice of this filing will be sent to the following parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.

> Paul K. Ogden - pogden@robertsandbishop.com
> Kenneth T. Roberts - kroberts@robertsandbishop.com
> Tasha R. Roberts - troberts@robertsandbishop.com
> Adam Lenkowsky - alenkowsky@robertsandbishop.com
> Anthony W. Overholt aoverholt@fbtlaw.com
> Marc Pe-Caine Sultzer msultzer@indygov.org
> Jennifer Lynn Haley jhaley@indy.gov

> s/ William A. Hahn
> William A. Hahn