UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ALAN KRESS and RANDY CARR, on their own behalf and on behalf of a class of those similarly situated, ) ) ) ) | |
| Plaintiffs, ) | |
| vs. ) | NO. 1:08-cv-00431-LJM-DML |
| ) | |
| CCA OF TENNESSEE, LLC, MARION COUNTY SHERIFF FRANK ANDERSON, VIRGINIA LEE, TIMOTHY LITTLE, JEFF CONWAY, and NEIL PROBST, ) ) ) ) ) | |
| Defendants. ) | |

## ORDER ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

This matter is before the Court on plaintiffs', Alan Kress ("Kress") and Randy Carr ("Carr") (collectively, "Plaintiffs"), Motion for Class Certification (Dkt. No. 29). Plaintiffs filed suit in this Court against defendants—CCA of Tennessee, LLC ("CCA"), Marion County Sheriff Frank Anderson (the "Sheriff"), and CCA employees Virginia Lee, Timothy Little, Jeff Conway, and Neil Probst (collectively, the "CCA Employee Defendants") (CCA, the Sheriff, and the CCA Employees, collectively, "Defendants")—challenging various conditions at Marion County Jail II ("Jail II"). Dkt. No. 17. The Court has considered the parties' submissions and rules as follows.

## I. BACKGROUND

CCA is a private company specializing in running correctional facilities under contract with local law enforcement agencies. Dkt. No. 27 at 4. Under contract with the Marion County Sheriff's Department ("Marion County"), CCA operates Jail II, located at 730

East Washington Street, Indianapolis, Indiana.  *Id.*  The CCA Employee Defendants all work for CCA at Jail II.  Dkt. No. 28 at 3.  Virginia Lee is a unit manager at Jail II.  *Id.*  Timothy Little is the health services administrator at Jail II.  *Id.*  Jeff Conway is the warden of Jail 2.  *Id.*  Neil Probst is a doctor providing medical services to Jail II inmates.  *Id.*  As part of its contract with CCA and pursuant to state and federal law, Marion County oversees operation of Jail II.  Dkt. No. 27 at 7.

In April 2008, when this suit was filed, Plaintiffs[1] were incarcerated at Jail II awaiting trial.  Dkt. No. 27 at 2.  During their time at Jail II, Plaintiffs allege that Defendants committed a number of violations of state and federal law in areas such as inmate mail policies, availability and handling of grievances,[2] medical care, and privacy of medical information.  *See generally* Dkt. No. 17.  In addition, Plaintiffs contend that the Sheriff failed to oversee CCA's operations properly, in violation of his obligations under state and federal law.  *Id.*  Plaintiffs contend that Defendants' violations entitle them to relief under 42 U.S.C. § 1983, as well as provisions of the Indiana Administrative Code and other statutes.  *Id.* at 2, 12–17.

On June 12, 2008, Plaintiffs filed a Motion for Class Certification, seeking certification of a class defined as "any and all persons currently, or who will be in the future,

---

[1] At the time the Amended Complaint was filed, five inmates sought designation as class representatives.  *See* Dkt. No. 17.  Since that time, three inmates have been withdrawn from consideration as class representatives.  Eric Staggs and Billy Ford withdrew as class representatives by providing notice to this Court.  *See* Dkt. Nos. 97, 102.  Timothy-Patrick Treacy was dismissed as a plaintiff for failure to exhaust administrative remedies.  Dkt. No. 85 at 9.  Therefore, only Alan Kress and Randy Carr remain as potential class representatives and named plaintiffs.  *See* Dkt. No. 104.

[2] The Court notes that in an Order of this Court on November 16, 2010, the Court dismissed Plaintiffs' claims relating to procedures for grievances for lack of subject matter jurisdiction on the ground that neither the Prison Reform Litigation Act nor the Indiana Jail Standards grant a private cause of action.  Dkt. No. 109 at 7.  Because these claims have been dismissed, the Court will not consider issues with grievance procedures in evaluating the Motion for Class Certification.

confined in the Jail #2 facility." Dkt. No. 30 at 2.  On February 2, 2009, following a request by Defendants, briefing on class certification was stayed to allow the Court first to decide whether Plaintiffs had exhausted their administrative remedies.  Dkt. No. 57 at 3.  On July 2, 2010, the Court lifted the stay, finding that Plaintiffs had exhausted administrative remedies such that their claims could proceed.  Dkt. No. 85 at 12.

Following the filing of this suit and the Motion for Class Certification, Plaintiffs were transferred from Jail II to other facilities, and neither has been returned to Jail II.  Dkt. No. 106-1 at 2–3.  Plaintiff Carr was transferred on August 5, 2008.  *Id.* at 3.  Plaintiff Kress was transferred on August 19, 2008.  *Id.* at 2.

The Court adds additional facts below as needed.

## II.  DISCUSSION

### A.  MOOTNESS

Before proceeding to a discussion of whether Plaintiffs meet the Rule 23 requirements for class certification, the Court will address Defendants' mootness argument. Defendants contend that, because Plaintiffs are no longer incarcerated in Jail II, their claims for injunctive relief are moot and they cannot serve as the class representatives for an action seeking said relief.  Dkt. No. 106 at 2.  Plaintiffs counter that, at the time the Motion for Class Certification was filed, Plaintiffs were incarcerated in Jail II, and Defendants' dilatory tactics should not render Plaintiffs' claims moot for purposes of serving as class representatives.  Dkt. No. 107 at 3–5.

A case is moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *U.S. Parole Comm'n v. Geraghty*, 445 U.S.

388, 396 (1980). Generally, if a plaintiff's claims become moot prior to class certification, that plaintiff may no longer serve as the class representative. *See Olson v. Brown*, 594 F.3d 577, 580 (7th Cir. 2010). However, there is an exception to the mootness doctrine in class certification when a claim is "so 'inherently transitory' that it is uncertain that any member of the class would maintain a live controversy long enough for a judge to certify a class." *Id.* (citing *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)).

Defendants contend that, in order to fall under the "inherently transitory" exception, Plaintiffs must demonstrate that their claims are "capable of repetition, yet evading review." *See* Dkt. No. 106 at 3–4. However, in *Olson*, the Seventh Circuit clarified that the "inherently transitory" exception is distinct from "capable of repetition, yet evading review." *See Olson*, 594 F.3d at 583. For the "inherently transitory" exception to apply, Plaintiffs must satisfy the *"Gerstein* test" and show that "(1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint." *Id.* at 581.

Turning to the first element of the *Gerstein* test, the Court concludes that Plaintiffs have met its requirements. "[T]he crux of the 'inherently transitory' exception is the uncertainty about the length of time a claim will remain alive." *Id.* at 582. In determining whether a given length of time is sufficiently uncertain, the *Olson* Court distinguished cases in which "the named plaintiffs knew, from the outset, exactly how long their claims would remain alive but chose to wait to file for class certification until the claim was nearly moot or already moot." *Id.* The *Olson* Court recognized that "the length of incarceration in a county jail generally cannot be determined at the outset and is subject to a number of

4

unpredictable factors, thereby making it inherently transitory." *Id.*; *see also Richardson v. Monroe Cnty. Sheriff*, No. 08-CV-174, 2008 WL 3084766, at *2–*3 (S.D. Ind. Aug. 4, 2008) (Young, J.) (denying dismissal of class action based on named plaintiff's release from incarceration). In this case, Plaintiffs were incarcerated at Jail II awaiting trial. The length of their incarceration was not determined, and it is undisputed that, at the time they filed for class certification, their claims were not moot. Therefore, the Court concludes that Plaintiffs meet the first element of the *Gerstein* test.

As for the second element of the *Gerstein* test, the Court concludes that Plaintiffs have shown that there will be a constant class of persons suffering the deprivation at issue. Contrary to Defendants' assertion, the "inherently transitory" exception does not require Plaintiffs to show that they themselves are likely to be subjected to the complained-of procedures in the future. *Id.* at 583. Instead, Plaintiffs must show that "the claim is likely to recur with regard to the class." *Id.* at 584. Assuming Plaintiffs' allegations are true, the Court has little trouble concluding that the same violations are likely to occur with regard to other Jail II inmates, who are members of the proposed class.

In short, the Court concludes that Plaintiffs' claims are "inherently transitory" under the *Gerstein* test and, therefore, not mooted for the purpose of serving as class representatives. However, the Court notes that, even though Plaintiffs' claims are not moot for purposes of serving as class representatives, release from Jail II renders Plaintiffs' individual claims moot. *See Koger v. Bryan*, 523 F.3d 789, 804 (7th Cir. 2008) (concluding that release from prison moots prisoner's individual claims for injunctive relief against prison). It is unquestioned that Plaintiffs are no longer incarcerated at Jail II, and, as such, their individual claims are moot. Because Plaintiffs' claims for injunctive relief in their

5

individual capacities are moot, those claims must be **DISMISSED**.

## B. CLASS CERTIFICATION

Certification of a class is governed by Federal Rule of Civil Procedure 23 ("Rule 23"). The propriety of class certification does not depend on the outcome of the suit or on whether a party will prevail on the merits but whether the requirements of Rule 23 are met. *See Eisen v. Carlisle*, 417 U.S. 156, 177–78 (1974); *Chavez v. Ill. State Police*, 251 F.3d 612, 620 (7th Cir. 2001). However, the Court is not required to accept the complaint's factual allegations as true but, rather, may "make whatever factual and legal inquiries are necessary" to ensure compliance with Rule 23. *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). The Court has "broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Chavez*, 251 F.3d at 629. The party seeking class certification bears the burden of proving that certification is appropriate. *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir. 1977).

To prevail on their Motion for Class Certification, Plaintiffs must propose a class definition that results in an identifiable class. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Having done so in this case, Plaintiffs next must satisfy the four requirements of Rule 23(a). *See Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000); *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 475 (7th Cir. 1997). The prerequisites in Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

Once the Court determines that Plaintiffs have satisfied these prerequisites, then the Court must determine whether they meet one or more of the requirements of Rule 23(b). *See Williams*, 204 F.3d at 760; *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596 (7th Cir. 1993). Plaintiffs seek certification pursuant to Rule 23(b)(2) and, therefore, must demonstrate that Defendants "ha[ve] acted or refused to act on grounds generally applicable to the class" so that final injunctive or declaratory relief will be appropriate for the class as a whole. *See* FED. R. CIV. P. 23(b)(2). Failure to meet any of the requirements of Rule 23 precludes class certification. *Harriston v. Chi. Trib. Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (citing *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir. 1976)). Even if class certification is granted, the Court may modify its Order if subsequent developments demonstrate that certification is improper. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (citing FED. R. CIV. P. 23(c)(1)).

### 1. RULE 23(a) REQUIREMENTS

To proceed as a class action, Plaintiffs bear the burden of showing that the proposed class meets the four requirements under Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008) (citing FED. R. CIV. P. 23(a)). Here, Defendants challenge only the typicality element of Rule 23(a). *See* Dkt. No. 106 at 12–13. As Plaintiffs propose a class including all current and future inmates at Jail II, the Court concludes that the numerosity element is satisfied. *See* FED. R. CIV. P. 23(a)(1). In addition, the Court concludes that Plaintiffs' claims present common questions of law and fact to satisfy the commonality requirement. *See* FED. R.

CIV. P. 23(a)(2). Thirdly, Plaintiffs and their counsel appear able to adequately represent and protect the interests of the class as a whole without "antagonistic or conflicting" individual claims. *See Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Finding the other three Rule 23(a) requirements present, the Court now turns to the typicality element.

For purposes of class certification, typicality requires that Plaintiffs' claims arise "from the same event or practice or course of conduct that gives rise to the claims of other class members" and "are based on the same legal theory." *Oshana*, 472 F.3d at 514. Some factual variations may not defeat typicality, but the requirement is intended to ensure that the named representatives' claims have "the same essential characteristics as the claims of the class at large." *Id.* In short, typicality requires that "[a]ll members of the class were subject to the same allegedly unlawful practices." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). As one court has stated, typicality is destroyed when "[t]here is a strong likelihood that each Plaintiff's case would necessarily be different." *Orr v. Elyea*, No. 08-CV-2232, 2009 WL 3837553, at *5 (C.D. Ill. Nov. 16, 2009).

Plaintiffs assert twenty different counts against Defendants, each of which must be examined for compliance with Rule 23(a)'s typicality requirement. *See generally* Dkt. No. 17. For ease of discussion, the Court will address Plaintiffs' claims by category as follows:[3]

- Counts One, Two, and Thirteen: the "Medical Care Counts." *Id.* at ¶¶ 84–85, 98.

---

[3] As this Court's November 16, 2010 Order dismissed Counts Five, Six, and Fifteen—those counts related to handling administrative grievances—of Plaintiffs' Amended Complaint for lack of subject matter jurisdiction, the Court will not evaluate these counts further. *See* Dkt. No. 109 at 5–7.

- Counts Three, Four, and Fourteen: the "Unsafe Condition Counts." *Id.* at ¶¶ 86–87, 99.

- Count Seven: the "Contract Count." *Id.* at ¶ 91.

- Counts Eight and Sixteen: the "Mail Counts." *Id.* at ¶¶ 92, 101.

- Counts Nine and Seventeen: the "Records Counts." *Id.* at ¶¶ 93, 102.

- Counts Ten and Eighteen: the "Privacy Counts." *Id.* at ¶¶ 94–95, 103.

- Counts Eleven and Nineteen: the "Reporting Counts." *Id.* at ¶¶ 96, 104.

- Counts Twelve and Twenty: the "Incentives Counts." *Id.* at ¶¶ 97, 105.

a. THE MEDICAL CARE, MAIL, RECORDS, AND REPORTING COUNTS

The Medical Care Counts allege inadequate medical care in violation of the Eighth and Fourteenth Amendments, as well as Title 210, Section 3-1-11 of the Indiana Administrative Code. *See id.* at ¶¶ 84–85, 98. Claims of inadequate medical care by their nature require individual determinations, as the level of medical care required to comport with constitutional and statutory standards will vary depending on each inmate's circumstances, such as preexisting medical conditions. In examining prisoner claims regarding medical care, other courts have reached similar conclusions. *See, e.g., Orr*, 2009 WL 3837553, at *5 (concluding that claims of inadequate hepatitis treatment lacked typicality); *Smith v. Sheriff of Cook Cnty.*, No. 07-C-3659, 2008 WL 1995059, at *2–*3 (N.D. Ill. May 6, 2008) (same for claims of inadequate dental care). The Court concludes that Plaintiffs have not shown the requisite typicality of the Medical Care Counts.

The Mail Counts allege that Plaintiffs have been denied the right to receive and send personal and legal mail in violation of Title 210, Section 3-1-16 of the Indiana Administrative

Code. Dkt. No. 17 ¶¶ 92, 101. Plaintiffs further allege that Jail II personnel have not followed internal CCA policies regarding the handling of mail. *Id.* The facts on the record indicate that rather than a systematic policy blocking the receipt and sending of mail, Plaintiffs complain of individual incidents of improper mail handling. Dkt. No. 106-2 at 12–13; Dkt. No. 106-3 at 9–13. Plaintiffs have not shown that these individual incidents resulted from policies or procedures applied to all Jail II inmates. Therefore, the Court concludes that the Mail Counts also fail Rule 23(a)'s typicality requirement.

The Records Counts allege that Plaintiffs were denied access to their requested medical records in violation of the Health Insurance Portability and Accountability Act ("HIPAA") and Indiana Code Section 16-39-1-1. Dkt. No. 17 ¶¶ 93, 102. These Counts fail typicality for one simple reason: Plaintiffs have not shown that prospective plaintiffs have requested their medical records and had their requests denied. The broad class requested by Plaintiffs, including all present and future inmates at the Jail II facility, undoubtedly includes numerous inmates who never requested their medical records. Therefore, the Records Counts would require individual fact-finding to determine which plaintiffs requested their medical records and had their requests denied. The Court concludes that Plaintiffs have not shown that the Records Counts are typical of their requested class as a whole.

The Reporting Counts allege that Jail II staff failed to report medical errors "as required by Indiana law." *Id.* at ¶¶ 96, 104. Once again, these claims by their nature require individual fact-finding. Just as the Medical Care Counts would require an individual determination of the medical care received by each inmate and its adequacy, the Reporting Counts would require an individual evaluation for each inmate as to whether a medical error occurred and was reported. The Court concludes that this fact-finding is too specific to

10

individual class members for the Reporting Counts to be typical across the class.

In short, the Count concludes that the Medical Care, Mail, Records, and Reporting Counts fail to meet Rule 23(a)'s typicality requirement.  As such, these Counts cannot be certified for class action purposes.  Additionally, as Plaintiffs' individual claims are moot because they are no longer incarcerated at Jail II, the Court **DISMISSES as moot** these Counts in their entirety.

### b. THE UNSAFE CONDITIONS, PRIVACY, AND INCENTIVES COUNTS

Although the Court concludes that many of Plaintiffs' claims fail to satisfy Rule 23(a)'s typicality requirement, some of Plaintiffs' allegations are typical for the class as a whole.  The Court now turns to address those allegations.

The Unsafe Conditions Counts allege that various conditions at Jail II, including the presence of mold and insect infestations, inadequate security staffing, and broken heating and air conditioning systems, amount to violations of Defendants' obligations to provide a safe and humane facility under the Eighth and Fourteenth Amendments, as well as various provisions of the Indiana Administrative Code.  Dkt. No. 17 ¶¶ 38–40, 86–87, 99.  These allegations are such that they could be determined on a collective basis without the need for individual fact-finding for individual inmates.  *See De La Fuente*, 713 F.2d at 232.  Therefore, the Court concludes that the Unsafe Conditions Counts are sufficiently typical.

The Privacy Counts allege that Jail II's intake policy, which has two prisoners in the room at a time during initial questioning about medical history, violates HIPAA's medical privacy provisions.  *Id.* at ¶¶ 94–95, 106.  Rather than contending that this was an isolated incident, Plaintiffs contend that this policy applied to intake for all inmates.  Therefore, the

question that must be determined for this claim—whether this policy did in fact exist—is the same for all inmates. The Court concludes, therefore, that the allegations of the Privacy Counts are sufficiently typical.

Lastly, the Incentives Counts allege that CCA paid its administrators financial incentives to encourage them to treat fewer medical patients, decline to report medical errors, and generally report more favorable conditions than were in fact present at Jail II. *Id.* at ¶¶ 97, 105. Plaintiffs contend that these incentives violate the Eighth and Fourteenth Amendments. *Id.* It is clear that these Counts would not require individual fact-finding for each inmate. Rather, it focuses on the payments from CCA to its administrators, which result from facility-wide results as opposed to incidents with individual inmates. Therefore, the Court concludes that the Incentive Counts are sufficiently typical across the proposed class.

### c. THE CONTRACT COUNT

The Contract Count alleges that CCA breached third-party contractual duties owed to inmates. Dkt. No. 17 ¶ 91. To the extent that the Court must determine whether inmates are third-party beneficiaries to the contract between CCA and Marion County, this question is typical for all class members. However, it is not clear that the question of whether CCA breached duties owed to inmates under the contract would be typical, as that question would depend on the language of the contract and the alleged breaches at issue. In their briefing on the Motion for Class Certification, Plaintiffs have given no further clarification on the contours of the Contract Claim and why class certification would be appropriate for it. *See generally* Dkt. Nos. 29, 107. Plaintiffs have the burden of demonstrating that class

certification is appropriate—*see Trotter*, 748 F.2d at 1184—and the Court concludes that Plaintiffs have not met that burden on the Contract Claim. Like the other claims failing Rule 23(a)'s typicality analysis, Plaintiffs' Contract Count must be **DISMISSED**.

### 2. RULE 23(b)(2)

In addition to meeting all the requirements of Rule 23(a), Plaintiffs must show that they qualify under one of the three provisions of Rule 23(b). *See Williams*, 204 F.3d at 760. Plaintiffs contend that they qualify under Rule 23(b)(2), under which they must demonstrate that Defendants "ha[ve] acted or refused to act on grounds generally applicable to the class" so that final injunctive or declaratory relief will be appropriate for the class as a whole. FED. R. CIV. P. 23(b)(2). The Seventh Circuit has taken Rule 23(b)(2) to require that class members' claims are "cohesive and homogeneous such that the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members." *Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 580 (7th Cir. 2000).

The Court finds that the Counts satisfying Rule 23(a)'s requirements—the Unsafe Conditions, Privacy, and Incentives Counts—also satisfy Rule 23(b)(2). Actions seeking injunctive relief to prevent future alleged illegal deprivations of civil rights are a "prime example" of a proper Rule 23(b)(2) class. *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1975). Injunctive or declaratory relief for those Counts would be appropriate for the class as a whole and would not require individually differentiated remedies. *Accord. Lemon*, 216 F.2d at 520. Therefore, the Court concludes that Plaintiffs' requested class may be certified for those claims.

However, the Court notes that, among other remedies, Plaintiffs' have requested punitive damages.  *See* Dkt. No. 17 ¶¶ 114–15.  Punitive damages are not an appropriate remedy for a Rule 23(b)(2) class.  *See, e.g.*, *Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894, 898 (7th Cir. 1999) (money damages are only permissible under Rule 23(b)(2) "when monetary relief is incidental to the equitable remedy"); *see also Hubler Chevrolet, Inc. v. Gen. Motors Corp.*, 193 F.R.D. 574, 580 (S.D. Ind. 2000) (Barker, C.J.).  Plaintiffs specifically seek relief under Rule 23(b)(2).  *See* Dkt. No. 17 ¶ 107; *see also generally* Dkt. Nos. 29, 107.  As such, Plaintiffs may not pursue claims for punitive damages.  Only claims based on injunctive or declaratory relief may proceed as a class action in this case.

### 3.  CLASS DEFINITION

As discussed above, Plaintiffs seek certification of a class including "any and all persons currently, or who will be in the future, confined in the Jail #2 facility."  Dkt. No. 17 ¶ 20.  However, the Court has broad discretion to modify the class definition if necessary.  *See Harden v. Raffensperger, Hughes & Co., Inc.*, 933 F. Supp. 763, 769 n.5 (S.D. Ind. 1996) (McKinney, J.) (modification of class definition *sua sponte*).  The class definition may be modified any time prior to a decision on the merits.  FED. R. CIV. P. 23(c)(1).  At this time, the Court declines to modify Plaintiffs' proposed class.  However, Defendants may petition the Court for modification of the class definition if subsequent evidence suggests that Plaintiffs' proposed class is inappropriate.

### III. CONCLUSION

For the reasons set forth herein, Plaintiffs' Motion for Class Certification (Dkt. No. 29) is **GRANTED in part** and **DENIED in part**.

Class Certification is **GRANTED** as to Counts Three, Four, Ten, Twelve, Fourteen, Eighteen, and Twenty of Plaintiffs' Amended Complaint. The Court will conditionally certify a class as follows:

> Any and all persons currently, or who will be in the future, confined in the Jail #2 facility.

Plaintiffs Alan Kress and Randy Carr are hereby **CERTIFIED** as class representatives, and Plaintiffs' current counsel is hereby **CERTIFIED** as class counsel.

Class Certification is **DENIED** as to all other Counts. Counts One, Two, Seven, Eight, Nine, Eleven, Thirteen, Sixteen, Seventeen, and Nineteen are **DISMISSED** in their entirety. Additionally, all of Plaintiffs' claims in their individual capacities under Counts Three, Four, Ten, Twelve, Fourteen, Eighteen, and Twenty are **DISMISSED as moot**.

IT IS SO ORDERED this 1st day of December 2010.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distribution to:

William A. Hahn
BARNES & THORNBURG LLP
william.hahn@btlaw.com

Jennifer Lynn Haley
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
jhaley@indy.gov

Adam Lenkowsky
ROBERTS & BISHOP
alenkowsky@roberts-bishop.com

Paul K. Ogden
ROBERTS & BISHOP
pogden@roberts-bishop.com

Anthony W. Overholt
FROST BROWN TODD LLC
aoverholt@fbtlaw.com

Kenneth T. Roberts
ROBERTS & BISHOP
ktrjustice@aol.com

Tasha Rebecca Roberts
ROBERTS AND BISHOP
troberts@roberts-bishop.com

Michael Rosiello
BARNES & THORNBURG LLP
mike.rosiello@btlaw.com

Marc Pe-Caine Sultzer
OFFICE OF CORPORATION COUNSEL
msultzer@indygov.org